UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHEAR MOBILITY, LLC d/b/a,
AFFORDABLE GROOMING SHEARS                                    **REPORT AND**
                                                              **RECOMMENDATION**
                                    Plaintiff,

v.                                                            18-CV-00163-LJV-JJM

MAURICE STOLL and
SHARON STOLL,

                                    Defendants.

_____

          Plaintiff, Shear Mobility, LLC d/b/a Affordable Grooming Shears, commenced

this action seeking a declaratory judgment and damages under the Digital Millennium Copyright

Act ("DMCA") for defendants' alleged conduct in wrongfully causing its website to be taken

offline for copyright infringement. Complaint [1].[1]  Before the court is defendants' motion to

dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. ("Rule")

12(b)(2) [14], which has been referred to me by District Judge Lawrence J. Vilardo for initial

consideration [15].  Having reviewed the parties' submissions [14, 20, 23], I recommend that the

motion be denied, without prejudice


                                    **BACKGROUND**

          Plaintiff, a New York entity, is in the business of selling primarily grooming

shears and accessories through its website. Complaint [1], ¶¶2, 13, 14.  Defendants, who are

located in Texas, own Freebird Bird Shears and operate a website (www.freebirdshears.com) that

---

[1]       Bracketed references are to the CM/ECF docket entries.  Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

also sells grooming shears.  Stoll Affidavit [14-3], ¶¶5, 6.  Defendants' website was created and is maintained in Texas.  Id., ¶7.  Other than for some sales from New York (totaling $1,470 from January 1 to April 13, 2018), the remaining 96% of their total yearly website sales come from outside of New York.  Id., ¶10.  Defendants (either individually or through their website) have not specifically targeted New York through sales visits, distributorships, advertisements, solicitations, promotions or other communications.  Id., ¶¶11, 12, 13, 14, 15.  They have no physical presence or licenses to transact business in New York.  Id., ¶¶16-19.

On or about December 11, 2017 plaintiff received a cease and desist letter from defendants' New York counsel, alleging that it was infringing on certain copyrights owned or controlled by Free Bird Shears. Toth Affidavit [20-2], ¶7, pp. 5-30 of 36 (CM/ECF).  Later that month, plaintiff received an e-mail from Weebly, its website domain host,[2] stating that it had received a DMCA take down notice from defendants' New York attorney. Id., ¶8, pp. 32-33 of 36.   That notice triggered Weebly to take down plaintiff's website on or about December 30, 2017, and it remained down until plaintiff was eventually able to have it restored. Id., ¶¶11, 14. Plaintiff alleges that it sells products to customers in New York and elsewhere, and that as a result of defendants' conduct, it was unable to generate online sales to its customers, including those in New York.  Id., ¶¶3, 17.

Plaintiff further alleges that defendants knew or reasonably should have known that its products did not infringe on defendants' copyright when they sent the DMCA take down notice.  Complaint [1], ¶48.  It seeks a declaratory judgment that the manufacture and sale of its products is lawful and does not infringe on defendants' alleged copyright, and seeks damages for defendants' alleged violation of DMCA, 17 U.S.C. §512(f).  Id., Counts I and II.

---

[2]        The record does not indicate where Weebly maintains plaintiff's website.

## ANALYSIS

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "A plaintiff facing a . . . 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a *prima facie* showing of personal jurisdiction." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). "A plaintiff can make such a *prima facie* showing through affidavits and supporting materials containing sufficient facts which, if credited, would establish personal jurisdiction over the defendant." Gaymar Industries, Inc. v. FirstMerit Bank, N.A., 2007 WL 894217, *3 (W.D.N.Y. 2007). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

"Neither the Copyright Act nor the DMCA contains its own personal jurisdiction or service provision." Reilly v. Commerce, 2016 WL 6837895, *2 (S.D.N.Y. 2016). Therefore, I must initially "determine whether the defendant is subject to jurisdiction under the law of the forum state - here, New York", and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014).

### A.  New York's Long-Arm Jurisdiction

Plaintiff relies on two sections of New York's long-arm statute for exercising jurisdiction over the defendants - the "transaction of business" (New York Civil Practice Rule ("CPLR") §302(a)(1)) and "tortious conduct" (CPLR §302(a)(3)(ii)) provisions. Plaintiff's Memorandum of Law [20], §II.

### 1.   CPLR §302(a)(1)

CPLR §302(a)(1) "authorizes jurisdiction over defendants if: 1) the defendants transact business in New York; and 2) the cause of action arises from that transaction of business." Reich v. Lopez, 858 F.3d 55, 63 (2d Cir.), cert. denied, 138 S. Ct. 282 (2017). Turning first to the transaction of business element, the mere availability of a website "to users in New York, standing alone, does not amount to transacting business in the state." Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009).  To determine whether a website subjects a defendant to personal jurisdiction, "courts must place the website on a 'spectrum of interactivity':   At one end are 'passive' websites - i.e., those that merely make information available to viewers. Such websites have 'been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant.' At the other end of the spectrum are 'interactive' websites - i.e., those that knowingly transmit goods or services to users in other states. Where an 'interactive' website is not only available but also purposefully directs activity into a forum state -for example, by making sales of goods or services to New York residents - those activities can be sufficient to trigger jurisdiction under section 302(a)(1)." Alibaba Group Holding Ltd. v. Alibabacoin Foundation, 2018 WL 2022626, *4 (S.D.N.Y. 2018); McGraw-Hill Global

Education Holdings, LLC v. Khan, 2018 WL 3094922, *2 (S.D.N.Y. 2018) ("if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction").

As demonstrated by plaintiff's submissions (Kloss Affidavit [201-], Exhibits A-H), which I must credit for purposes of this motion, defendants' website is interactive rather than passive. *See* Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC, 2016 WL 3748480, *3 (S.D.N.Y. 2016) ("[a] website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website'"). Defendants also concede that their website has resulted in the sale of goods to New York residents. Stoll Affidavit [14-3], ¶10. While they point to the fact that their sales to New York customers constitute only a small percentage of their overall sales, "Section 302(a)(1) is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction". Alibaba Group Holding Ltd., 2018 WL 2022626, *5.

Whether plaintiff's causes of action arise from defendants' business transactions in New York presents a closer question. "This inquiry is relatively permissive . . . and does not require causation, but merely a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim. . . . The claim need only be in some way arguably connected to the transaction". Al Rushaid v. Pictet & Cie, 28 N.Y.3d 316, 329 (2016), reargument denied, 28 N.Y.3d 1161 (2017).

Pointing to its claim for a violation of the DMCA arising from defendants' allegedly improper take down notice, plaintiff argues that defendants' conduct was "to further [their] transaction of business in New York by improperly excluding a New York competitor,

Plaintiff, from conducting business in New York". Plaintiff's Memorandum of Law [20], p. 10. Although all pleadings and affidavits must be construed in the light most favorable to the plaintiff and all doubts resolved in its favor, courts will not resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013). As defendants point out, plaintiff fails to "offer any factual basis for alleging this alternative motive to Defendants' proper use of DMCA 'notice-and-takedown' provision". Defendants' Reply Memorandum of Law [23], p. 3.

However, from the allegations that I am able to consider and must credit for purposes of this motion, defendants knew or should have known that plaintiff's products did not infringe on their copyright when their New York based attorney sent the DMCA take down notice[3] and that as a result of that conduct, plaintiff suffered a loss of revenue from potential sales (Complaint [1], ¶¶48-50), including to its customers in New York. Toth Affidavit [20-2], ¶17. Thus, the practical effect of their alleged conduct was to impact plaintiff's sales to New York customers, a base of customers that also generated sales for defendants' website. Under these circumstances, I conclude that defendants' conduct of business in New York is "not completely unmoored" from plaintiff's claims.

### 2. CPLR §302(a)(3)(ii)

The parties agree that a plaintiff relying on §302(a)(3)(ii) must show (1) the defendant committed a tortious act outside of the State; (2) the cause of action arises from that

---

[3]   While "[a] non-resident who retains local counsel in New York has transacted business in the state", Flemming, Zulak & Williamson, LLP. v. Dunbar, 2004 WL 2496092, *2 (S.D.N.Y. 2004), plaintiff does not rely on that argument.

act; (3) the act caused injury to a person or property with the State; (4) the defendant expected or should reasonably have expected the act to have consequences in the State; and (5) the defendant derived substantial revenue from interstate or international commerce.  Plaintiff's Memorandum of Law [20], p. 11; defendants' Reply Memorandum of Law [23], p. 4 (*both citing* LaMarca v. Pak-Mor Manufacturing Co., 95 N.Y.2d 210, 214 (2000)).  The dispute centers on the third and fourth elements – *i.e.*, injury and foreseeability.  Defendants' Reply Memorandum of Law [23], p. 5.

"[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the "original event which caused the injury." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999).  Plaintiff likens this this to the traditional commercial tort case where "the situs of the injury is . . . the place where plaintiff lost business".  Plaintiff's Memorandum of Law [20], p. 12 (*quoting* Verragio, Ltd. v. Malakan Diamond Co., 2016 WL 6561384, *5 (S.D.N.Y. 2016)). *See* Penguin Group. (USA) Inc. v. American Buddha, 16 N.Y.3d 295, 306 (2011) ("[i]n the traditional commercial tort cases . . . courts have generally linked the injury to the place where sales or customers are lost").

Defendants do not dispute the application of these principles to this case.  Instead, they argue that mere "'remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here'", are insufficient to establish jurisdiction.  Defendants' Reply Memorandum of Law [23], p. 5 (*quoting* Troma Entertainment, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 218 (2d Cir. 2013)).  By contrast, however, "[h]arm to a business in the New York market through lost sales or lost customers' may meet the requirement of injury in the forum state, but 'those lost sales must be in

the New York market, and those lost customers must be New York customers". Alibaba Group

Holding Ltd., 2018 WL 2022626, *8; Brown v. Web.com Group, Inc., 57 F. Supp. 3d 345, 356

(S.D.N.Y. 2014).  As discussed above, plaintiff's allegations (which I must credit for purposes of

this motion) are that a consequence of defendants' actions in having its website taken offline

through the use of an attorney in New York was, *inter alia*, its inability to generate online sales

to its customers in New York.  During this same time, defendants, who sold the same products in

the same market as plaintiff, were able to continue to use their website to generate sales to New

York customers.

        As to the foreseeability prong of CPLR §302(a)(3)(ii), "[t]he test of whether a

defendant expects or should reasonably expect his act to have consequences within the State is

an objective rather than subjective one". Kernan v. Kurz–Hastings, Inc., 175 F.3d 236, 241 (2d

Cir.1999).   "[F]oreseeability must be coupled with evidence of a purposeful New York

affiliation, for example, a discernible effort to directly or indirectly serve the New York market."

Merck Eprova AG v. Gnosis S.p.A., 2008 WL 5336587, *4 (S.D.N.Y. 2008).  "Where

intentional misconduct is at issue, the wrongdoer should reasonably anticipate being called to

answer for its conduct wherever the results of that conduct are felt." Simon v. Philip Morris, Inc.,

86 F. Supp. 2d 95, 132 (E.D.N.Y. 2000).  Here, it should have been reasonably foreseeable to

defendants that their conduct, in sending a take down notice to a New York entity targeting its

competing sales website which serviced New York customers, would have consequences in New

York.  *See* Mrs. U.S. National Pageant, Inc. v. Miss U.S. Organization, LLC, 875 F. Supp. 2d

211, 224 (W.D.N.Y. 2012) ("[t]he fact that defendants are engaged in the same type of business

as plaintiff, and presumably compete for a finite field of contestants, audience members and

advertisers, further supports a finding of jurisdiction in New York. That is particularly so

inasmuch as defendants' infringing acts are alleged to have been taken in bad faith and with full

knowledge of plaintiff's preexisting trademarks").


**B. Due Process Considerations**

Even where, as here, there exists specific jurisdiction over a nondomiciliary, the

exercise of that jurisdiction must comply with federal due process.[4] "To establish personal

jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has

'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction  is

reasonable in the circumstances" Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168–69 (2d

Cir. 2015). "Compliance with New York's long-arm statute usually - though not invariably -

results in compliance with the constitutional standard as well." Joint Stock Co. Channel One

Russia Worldwide v. Infomir LLC, 2017 WL 825482, *15 (S.D.N.Y.), adopted, 2017 WL

1321007 (S.D.N.Y. 2017).

"Where, as here, specific jurisdiction is asserted, minimum contacts necessary to

support such jurisdiction exist where the defendant purposefully availed itself of the privilege of

doing business in the forum and could foresee being haled into court there." Eades, 799 F.3d at

169.  That "analysis overlaps significantly with New York's § 302(a)(1) inquiry into whether a

defendant transacted business in the State." Joint Stock Co. Channel One Russia Worldwide,

2017 WL 825482, *15.  As discussed above, defendants' sales to customers in New York

through its interactive website and allegedly improper take down of the website of their

---

[4]      Although defendants argue that the exercise of general jurisdiction over them violates due
process, plaintiff has not relied on the exercise of general jurisdiction.  Defendants' Reply Memorandum
of Law [23], pp. 7-10. See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589,
595 (8th Cir. 2011) ("[b]ecause it extends to causes of action unrelated to the defendant's contacts with
the forum state, general jurisdiction over a defendant is subject to a higher due-process threshold").

competitor located in New York, who also made website sales to New York customers, constitute sufficient minimum contacts with New York. *See* Rene Schonefeld Industrie-en Handelsonderneming BV v. Jamil, 2012 WL 13028921, *3 (D. Conn.), adopted, 11-cv-10145(RNC) [33] (D. Conn. 2012) ("[t]he defendants' interactive website invites consumers, including those from Connecticut, to purchase their products. By operating a commercial website to promote and sell their goods, the defendants have availed themselves of the benefits of doing business in Connecticut"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, 2017 WL 825482, *15 ("sales of goods or services to customers in New York through an interactive website can satisfy the minimum contacts requirement").

"Where a defendant has purposefully directed its activities at the forum state, it may still defeat jurisdiction on due process grounds" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 173 (2d Cir. 2013), if it presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable". Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).   The following factors are part of the reasonableness analysis:  "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Eades, 799 F.3d at 169.

Although defendants argue that the exercise of personal jurisdiction over them in this case would "offend the notions of 'fair play', substantive justice' and undoubtedly stretch the meaning of 'purposeful availment'", the only specific argument they make is that requiring them "[t]o defend suits in every state simply because one operates an online business would be

unduly burdensome on any individual and certainly 'random' and 'fortuious'". Defendants'

Memorandum of Law [14-1], pp. 13-14. Even if that were so, defendants' conduct transcended

merely operating an online business, they also allegedly improperly took down the website of a

competitor located in New York, that too was selling products through its website to New York

customers. For these reasons, defendants have not demonstrated that this is an "'exceptional

situation' where  exercise of jurisdiction is unreasonable even though minimum contacts are

present". Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 130 (2d Cir.

2002);

**CONCLUSION**

For these reasons, I conclude, at this early stage of the case, that plaintiff has

made a *prima facie* showing of personal jurisdiction. Therefore, I recommend that defendants'

motion [14] be denied, without prejudice.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and

Recommendation must be filed with the clerk of this court by October 24, 2018. Any requests for

extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . .

. waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F.

2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal

Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

-11-

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated:  October 10, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
